IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>STEVEN C. LEE (01),<br><br>    Defendant. | Case No. 15-40037-01-DDC |

**MEMORANDUM AND ORDER**

This matter comes before the court on defendant Steven C. Lee's Motion to Reduce Sentence under 18 U.S.C. § 3582(c)(1)(A)(i) (Doc. 34). The government filed a Response (Doc. 36) and Mr. Lee filed a Reply (Doc. 37). For reasons explained below, the court dismisses the motion for lack of subject matter jurisdiction.

**I.  Background**

On May 6, 2015, a grand jury returned an Indictment charging Mr. Lee with knowingly and intentionally possessing with intent to distribute methamphetamine—violating 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C). Doc. 1 at 1. It also charged Mr. Lee with knowingly and intentionally possessing a firearm—violating 18 U.S.C. § 924(c)(1)(A). *Id.* at 2. Mr. Lee pleaded guilty to 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). Doc. 20 at 1. The parties entered into a Rule 11(c)(1)(C) plea agreement and "[t]he parties propose[d], as an appropriate disposition of the case: (a) 72 months imprisonment; (b) 3 years of supervised release; (c) no fine; and (d) the mandatory special assessment of $100." *Id.* at 2. At the time, this was quite a bargain for Mr. Lee because the Presentence Investigation Report ("PSR") calculated his guidelines range as 151–188 months. Doc. 22 at 16 (PSR ¶ 85). The court accepted the parties'

agreement and sentenced Mr. Lee to 72 months' imprisonment and 3 years' supervised release—consistent with the parties' plea agreement. Doc. 29; *see also* Doc. 20.

## II.    Legal Standard

"'Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute[.]'" *United States v. James*, 728 F. App'x 818, 822 (10th Cir. 2018) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). The Tenth Circuit "has held that 'a district court is authorized to modify a defendant's sentence only in specified instances where Congress has expressly granted the court jurisdiction to do so.'" *United States v. Poutre*, 834 F. App'x 473, 474 (10th Cir. 2021) (quoting *United States v. White*, 765 F.3d 1240, 1244 (10th Cir. 2014) (brackets omitted)).

Section 3582(c) of Title 18 announces a general rule that the "court may not modify a term of imprisonment once it has been imposed[.]" But the statute also recognizes certain exceptions. Even after it has imposed a term of imprisonment, the sentencing court may modify that term "upon motion of the defendant after [1] the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [2] the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A). "Under that statute, a district court may reduce a sentence if, after considering any applicable sentencing factors in 18 U.S.C. § 3553, it finds 'extraordinary and compelling reasons warrant such a reduction' and the 'reduction is consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. Haynes*, 827 F. App'x 892, 895 (10th Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). "'Unless the basis for resentencing falls within one of the specific categories authorized by section 3582(c), the district court lack[s] jurisdiction to consider [the

defendant's] request.'" *Poutre*, 834 F. App'x at 474 (quoting *United States v. Brown*, 556 F.3d 1108, 1113 (10th Cir. 2009) (quotations omitted)). "[Tenth Circuit] cases thus require the movant to show that § 3582(c) authorizes relief for the court to have jurisdiction." *Id.* (citing *White*, 765 F.3d at 1250; then citing *United States v. C.D.*, 848 F.3d 1286, 1291 (10th Cir. 2017)); *see also United States v. Saldana*, 807 F. App'x 816, 819 (10th Cir. 2020) ("Unless the basis for resentencing falls within one of the specific categories authorized by section 3582(c), the district court lack[s] jurisdiction to consider [the defendant's] request." (second alteration in original, citations and internal quotation marks omitted)).

### III. Discussion

#### A. Exhaustion or Lapse Under 18 U.S.C. § 3582(c)(1)(A)

An inmate seeking compassionate release under § 3582(c)(1)(A) must first "request that the BOP file a compassionate-release motion on his behalf to initiate his administrative remedies." *United States v. Springer*, 820 F. App'x 788, 791 (10th Cir. 2020) (citations omitted); *see also* 18 U.S.C. § 3582(c)(1)(A). The court properly may consider a defendant's motion under § 3582(c)(1)(A) filed after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility[.]" 18 U.S.C. § 3582(c)(1)(A). "In other words, if a warden lets 30 days pass without responding to an inmate's request under § 3582(c)(1)(A), the inmate may proceed directly to file a motion with the court who imposed the prison term." *United States v. Harris*, No. 15-40054-01-DDC, 2020 WL 7122430, at *3 (D. Kan. Dec. 4, 2020) (discussing competing readings of "the lapse of 30 days"). But "if the warden responds to a request within 30 days, defendant must fully exhaust available administrative appeals before filing a motion in district court." *United States v. McIntosh*, No. CR 11-20085-01-KHV, 2020

3

WL 5747921, at *2 (D. Kan. Sept. 25, 2020), *reconsideration denied*, No. CR 11-20085-01-KHV, 2020 WL 6270918 (D. Kan. Oct. 26, 2020) (citations omitted).

Mr. Lee asserts he "requested compassionate release within the BOP at his institution on July 30, 2020 . . . [and] pointed to his increased risk from COVID-19, the sentence he had already served, and his performance in the BOP as the basis for his request." Doc. 34 at 2; *see also* Doc. 34-1 at 1. Mr. Lee argues the court has jurisdiction to consider his motion because "[m]ore than thirty-days have passed since Mr. Lee made his request." *Id.* at 2–3. And, the government concedes Mr. Lee met § 3582(c)(1)(A)'s exhaustion requirement and asserts more than "30 days have passed since July 30, 2020, without a response by the Warden at Forrest City[.]" Doc. 36 at 9 n.5. The court finds more than 30 days have passed without a response from the warden, so, Mr. Lee satisfied the lapse requirement. *See McIntosh*, 2020 WL 5747921, at *2. Next, the court considers whether Mr. Lee presents extraordinary and compelling circumstances.

        **B.**      **Extraordinary and Compelling Circumstances**

Mr. Lee asserts his medical conditions—obesity, asthma, hypertension—combined with his race and conditions at FCI Forrest City constitute extraordinary and compelling reasons during the COVID-19 pandemic. *See* Doc. 34. Mr. Lee argues the "combination of ailments greatly increases the chances of Mr. Lee requiring hospitalization, intensive care, or death" if infected with COVID-19. *Id.* at 4.

The government concedes two of Mr. Lee's asserted medical conditions—obesity and asthma—are extraordinary and compelling reasons under § 3582(c)(1)(a) given "CDC and/or DOJ guidelines" during the COVID-19 pandemic. Doc. 36 at 17. The court agrees.

Mr. Lee's BMI of 33.6 qualifies as obese. Doc. 34 at 5. The CDC designates obesity as a medical condition that puts individuals at increased risk for severe illness from COVID-19. *See* CDC, People with Certain Medical Conditions (updated Feb. 22, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Mar. 2, 2021) ("Adults of any age with the following conditions **are at increased risk** of severe illness from the virus that causes COVID-19: . . . Obesity (body mass index [BMI] of 30 kg/m$^2$ or higher but < 40 kg/m$^2$)").

Mr. Lee asserts his asthma is severe enough to require an Albuterol inhaler. Doc. 34 at 6. He also asserts that he suffers from hypertension. *Id.* at 10. The CDC designates asthma and hypertension as conditions that might increase the risk of severe illness from COVID-19. *See* CDC, People with Certain Medical Conditions (updated Feb. 22, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Mar. 2, 2021) ("[A]dults of any age with the following conditions **might be at increased risk** for severe illness from the virus that causes COVID-19: . . . Asthma (moderate-to-severe) . . . Hypertension or high blood pressure[.]"). The court also recognizes the increased risk to an individual with multiple health conditions during the COVID-19 pandemic. *See id.* ("The more underlying medical conditions someone has, the greater their risk is for severe illness from COVID-19."). Mr. Lee has established that his asserted medical conditions present an increased risk of severe illness from COVID-19 and thus qualify as extraordinary and compelling.

Satisfied that Mr. Lee's health conditions constitute an extraordinary and compelling reason under § 3582(c)(1)(A)(i), the court next considers whether the relevant sentencing factors under 18 U.S.C. § 3553(a) warrant the sentence modification Mr. Lee requests.

C.     **Sentencing Factors of 18 U.S.C. § 3553(a)**[1]

Mr. Lee asks the court to reduce his "sentence to time served and put him on home confinement as a condition of supervised release." Doc. 34 at 13. The government opposes Mr. Lee's motion because, it argues, § 3553(a)'s sentencing factors disfavor his request. Doc. 36 at 18–19. The government asserts that "a reduction to time-served would run counter relative to the nature and seriousness of his offense and the need for his sentence to provide just punishment and otherwise promote respect for the law." *Id.* at 19; *see also* 18 U.S.C. § 3553(a)(1)–(2)(A). And, it argues, Mr. Lee's "criminal history and recidivism rate unequivocally demonstrate that he remains a danger to the community." Doc. 36 at 19.

The court may "reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—(i) extraordinary and compelling reasons warrant such a reduction[.]" 18 U.S.C. § 3582(c)(1)(A)(i); *see also United States v. Johnson*, No. 15-40064-01-DDC, 2020 WL 5981676, at *5–6 (D. Kan. Oct. 8, 2020) (discussing § 3553(a) and the required shift in the court's § 3553(a) analysis to warrant the requested sentence modification); *cf. United States v. Cumins*, 833 F. App'x 765, 767 (10th Cir. 2021) (affirming denial of compassionate release after district court determined "the statutory sentencing factors would weigh against early release" and finding "[t]his reasoning fell within the realm of discretion afforded to the district court").

---

[1]     The relevant sentencing factors the court considers are: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and sentencing range established for the offense committed; (5) any pertinent policy statement; (6) the need to avoid unwarranted sentence disparities; and (7) the need to provide restitution to any victims of the offense. *See* 18 U.S.C. § 3553(a).

If a proposed modified sentence strays too far from the original sentence, the § 3553(a) factors cannot support the sentence reduction, even where a defendant faces extraordinary and compelling circumstances. *See United States v. Pope*, No. 16-10039-JTM, 2020 WL 5704270, at *1 (D. Kan. Sept. 24, 2020) ("This court has concluded that compassionate release based on COVID-19 related concerns should be denied where the resulting sentence would materially depart from an appropriate § 3553(a) sentence" (citations omitted)); *United States v. Kaufman*, No. 04-40141-1-JTM, 2020 WL 4196467, at *2 (D. Kan. July 21, 2020) ("Even when an older inmate faces some serious medical condition, compassionate release should be denied if it would radically alter the appropriate § 3553 sentence." (citations omitted)); *cf. United States v. Edwards*, No. 17-40093-01-DDC, 2020 WL 7263880, at *3 (D. Kan. Dec. 10, 2020) (granting motion under § 3582(c)(1)(A) where defendant served nearly 95% of his sentence and already had transferred to a residential reentry center).

Here, Mr. Lee is projected to complete his term of imprisonment on September 19, 2022.[2] Doc. 34 at 20; *see also* Steven C. Lee, Reg. No. 25620-031, https://www.bop.gov/inmateloc/ (last visited Mar. 2, 2021). So, roughly 18 months—25%—of his 72-months prison term remain. He asks the court to modify his sentence by reducing his term of imprisonment to time served and adding "an eighteen-month term of home confinement and a year and a half of supervised release to follow." Doc. 37 at 9.

To grant this request would reduce the severity of Mr. Lee's sentence. The extent of the severity reduction is the difference between (1) 18 months' imprisonment and (2) 18 months' home confinement.

---

[2] This projection must reflect substantial good time credit for Mr. Lee's time in federal custody didn't begin until August 18, 2017. So, 72 months later would arrive in August 2023.

Replacing a period of imprisonment with a corresponding period of home confinement can mitigate the extent to which the sentence modification reduces the severity of the total sentence. *See Johnson*, 2020 WL 5981676, at *6. But home confinement and imprisonment are not equivalents. Here, home confinement would replace about 25% of the term of imprisonment. A conclusion that this modified sentence is "sufficient . . . to comply with the purposes" § 3553(a)(2) sets forth would require a significant change in the court's view of the § 3553(a) factors as they presented at the time of sentencing.

Mr. Lee asserts § 3553(a)'s sentencing factors, when considered today, favor reducing his sentence. He makes three main arguments.

*First*, Mr. Lee argues the nature and circumstances of his offense and his personal history weigh in favor of reducing his sentence. Doc. 34 at 19; *see also* 18 U.S.C. § 3553(a)(1). Mr. Lee's offense conduct involves a traffic stop when law enforcement found 20.25 grams of methamphetamine and a firearm. *Id.* He argues "[n]o violence was used or threatened in relation to this offense." *Id.* This argument ignores the firearm located next to Mr. Lee while he was driving the car containing the methamphetamine. *See* Doc. 22 at 3–5 (PSR ¶¶ 8–9, 16). Separately, Mr. Lee asserts he "does not have a violent criminal history." Doc. 34 at 19.

Mr. Lee also describes his rehabilitative efforts while in BOP custody. *Id.* Mr. Lee has worked as a hospital orderly and completed his GED. *Id.* Mr. Lee completed the Drug Education Program and Non Residential Drug Treatment Program. *Id.* And, Mr. Lee started the Residential Drug Treatment Program but COVID-19 delayed the program. *Id.* at 19–20. Mr. Lee argues, if he completed the program, he would qualify for a sentence reduction. *Id.* at 20; *see also* Doc. 37 at 2 ("the RDAP program [] would qualify him for a reduction in sentence of

one-year"). He also "has maintained positive family support and ties" and reports no disciplinary incidents within the last six months. Doc. 34 at 19.[3]

The court recognizes and commends, Mr. Lee's rehabilitative efforts. And, the court is sympathetic to the challenges that the COVID-19 pandemic presents to Mr. Lee's attempts to seek drug treatment. Mr. Lee's rehabilitative efforts weigh in favor of his request. *See* 18 U.S.C. § 3553(a)(1). But, as explained below, other sentencing factors weigh against reducing Mr. Lee's sentence to time served.

*Second*, Mr. Lee argues if the court sentenced him today, the sentencing guidelines would no longer define him as a career offender or apply the career offender sentence enhancement—worth 12 points—under U.S.S.G. § 4B1.1. Doc. 34 at 20–21 (citing Doc. 22 at 5 (PSR ¶ 21)). He argues the two convictions the PSR uses to determine career offender status—99CR2917 (possession with intent to sell methamphetamine) and 14CR2863 (attempted distribution of marijuana)—no longer qualify as controlled substance offenses under *United States v. Madkins*. Doc. 34 at 21–22 n.92 (citing 866 F.3d 1136 (10th Cir. 2017)). Thus, neither offense can support a career offender sentence enhancement any longer. And so, Mr. Lee argues that reducing his sentence to time served is consistent with the length of sentence applicable for his offense. *Id.*

But, Mr. Lee provides no analysis explaining why our Circuit's reasoning in *Madkins* applies to his case. *See id.* He asserts that "his offense level would be 20 and his total offense

---

[3]     Mr. Lee's Reply asserts his mother is in hospice care and her health is in decline. Doc. 37 at 1. The court may consider Mr. Lee's family circumstances under § 3553(a)'s sentencing factors. *See United States v. Munoz-Nava*, 524 F.3d 1137, 1148 (10th Cir. 2008) (affirming district court's sentence which considered defendant's unique family circumstances to justify a downward departure in sentence); *see also* 18 U.S.C. § 3553(a)(1) (considering "history and characteristics of the defendant"). While the court is sympathetic to Mr. Lee's family circumstances, he fails to show why his mother's illness alters the court's analysis of § 3553(a)'s sentencing factors. *Cf. Munoz-Nava*, 524 at 1142–43 (considering defendant's "extraordinary" family circumstances—defendant's role as sole caregiver to his 8-year old child and ailing and elderly parents).

level would be 17 after acceptance of responsibility . . . . producing a sentencing range of 51 to 63 months[.]" *Id.* at 21.  And, Mr. Lee argues, "[h]e has already served the equivalent of a 51-month sentence after factoring in good time credits."  *Id.*; *but see id.* at 20 (asserting Mr. Lee has served 40 months).  So, Mr. Lee concludes, reducing his sentence to time served and adding a term of home confinement is consistent with "the kinds of sentence and sentencing range established for" the offense for which he is currently imprisoned.  *See* 18 U.S.C. § 3553(a)(4).

The government doesn't challenge Mr. Lee's argument that he no longer qualifies as a career offender or his argument that, if sentenced today, his guidelines range would equal 51–63 months' imprisonment.  Indeed, the government's Response doesn't mention the term "career offender" at all.  *See* Doc. 36.  Instead, the government argues Mr. Lee's "criminal history and recidivism rate unequivocally demonstrate that he remains a danger to society."  Doc. 36 at 19.  It asserts this is Mr. Lee's "**20th criminal conviction** between the years 1994 and 2016, and his **11th controlled substance conviction** during that same time-frame."  Doc. 36 at 19.  Mr. Lee's "criminal history result[ed] in a criminal history score of 23 and a criminal history category of VI."  *Id.*  But, it provides no response to Mr. Lee's argument that he has served a sufficient sentence in light of his changed career offender status.

Our court has concluded that when a defendant satisfies § 3582(c)(1)(A)(i)'s extraordinary and compelling requirement, the court may consider whether the sentencing guidelines range, if calculated today, would result in a lower sentence.  *See United States v. Gilchrist*, No. CR 12-20066-40-KHV, 2020 WL 5408138, at *5 (D. Kan. Sept. 9, 2020) (analyzing § 3553(a)'s sentencing factors and considering "if defendant were sentenced today for the same offense, his sentencing range would be significantly lower because he would no longer qualify as a career offender under Section 4B1.1 of the Sentencing Guidelines").

10

Before considering whether Mr. Lee has served a sufficient sentence, the court analyzes whether Mr. Lee's predicate offenses qualify him as a career offender. Mr. Lee's PSR cites two previous Kansas convictions in support of the career offender enhancement, 99CR2917 and 14CR2863. Doc. 22 at 5 (PSR ¶ 21). These convictions are ones for possession of methamphetamine with intent to sell (felony), *id.* at 7 (PSR ¶ 31), and attempted distribution of marijuana (felony), *id.* at 11 (PSR ¶ 46).

The Sentencing Guidelines apply a career offender enhancement if: "(1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1.

> The term "controlled substance offense" means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. § 4B1.2(b). Our Circuit, in *United States v. Madkins*, determined defendant's predicate offenses under Kansas law—"possession with intent to sell cocaine and marijuana"—were defined more broadly than the federal sentencing guideline's definition of "controlled substance offense." 866 F.3d at 1144–45 (analyzing U.S.S.G. § 4B1.2(b)—which remains unchanged). "Federal law provides that for purposes of this definition, 'distribute' means 'to deliver . . . a controlled substance or listed chemical.'" *Id.* at 1144 (quoting 21 U.S.C. § 802(11)). And "Kansas law defines 'sale' to include an 'offer to sell.'" *Id.* at 1145 (quoting Kan. Stat. Ann. § 65-4163(a)(3) (2001)). "[A] conviction for possession with intent to sell a controlled substance—where sale is defined to include an offer—is broader than the conduct criminalized

11

in § 4B1.2(a) and the authoritative commentary." *Id.* at 1148. "[S]ince an offer to sell is broader than distribution as defined in the Guidelines, [defendant]'s prior offenses are not controlled substance offenses for purposes of the career-offender enhancement." *Id.* at 1145.

As in *Madkins*, Mr. Lee's career offender enhancement relied on two Kansas drug convictions. Mr. Lee's predicate offenses were possession of methamphetamine with intent to sell and attempted distribution of marijuana. *See* Doc. 22 at 7, 11 (PSR ¶¶ 31, 46). Federal law still defines "distribute" as "to deliver . . . a controlled substance or a listed chemical." 21 U.S.C. § 802(11). During Mr. Lee's first predicate offense—possession of marijuana with intent to sell—Kansas prohibited "sale or distribution" of a controlled substance, making it unlawful for "any person to sell, *offer for sale* or have in such person's possession with the intent to sell, deliver or distribute; cultivate; prescribe; administer; deliver; distribute; dispense or compound" methamphetamine. Kan. Stat. Ann. § 65-4161(a) (1999) (emphasis added). When Mr. Lee committed his second predicate offense—attempted distribution of marijuana—Kansas defined "distribute" as including "sale, *offer for sale* or any act that causes some item to be transferred from one person to another." Kan. Stat. Ann. § 21-5701 (2012) (emphasis added). "[B]y defining sale to include a mere offer to sell, Kansas law criminalizes a broader swath of conduct than in § 4B1.2.(b) of the Guidelines." *Madkins*, 866 F.3d at 1147. So, Kansas defines Mr. Lee's two predicate offenses to include behavior beyond the federal guidelines' definition. So, Mr. Lee's two predicate offenses could no longer support a career offender enhancement under U.S.S.G. § 4B1.2.

Mr. Lee asserts that without the career offender enhancement, his offense level equals 17 because his Adjusted Offense Level without the Chapter 4 Enhancement, 20, was lowered by 3 points for acceptance of responsibility. Doc. 34 at 20–21; *see also* Doc. 22 at 5 (PSR ¶¶ 22–23).

12

An offense level of 17 and a criminal history category of VI provides a sentencing guidelines range of 51–63 months' imprisonment. U.S.S.G. § 5A. And, he argues, with good time credit he has served about 51 months—now 54 months—a sufficient sentence for his offense conduct. *See* Doc. 34 at 21 ("He has nearly served the equivalent of a 51-month sentence after factoring in good time credits.").[4]

Judge Lungstrum considered—and rejected—a similar situation and argument in *United States v. Von Vader* when defendant's career offender enhancement no longer applied. No. 10-20109-01-JWL, 2020 WL 7186152, at *2–3 (D. Kan. Dec. 7, 2020). Judge Lungstrum reasoned defendant may have agreed "a 120-month sentence was appropriate because he realized he was facing a career offender designation such that he would not agree to that sentence today." *Id.* at *3. But, "while the career offender designation would not apply, it is beyond dispute that defendant's prior convictions were serious, dangerous and reflect a pattern of recidivism." *Id.* And, the court noted the underlying conduct of a previous predicate offense, while no longer considered a "crime of violence" included "telephon[ing] his father and his father's wife more than 20 times per day over a six-week period and threaten[ing] to kill them by 'bashing them with a hammer.'" *Id.* The court concluded it was "not satisfied that the change in career offender designation tips the scales in favor of defendant and, in light of all the circumstances, the court cannot conclude that defendant is a proper candidate for compassionate release." *Id.*

---

[4] Without good time credit added, Mr. Lee has served about 43 months in BOP custody. *See* Doc. 34 at 20. *See also* Lee, Steven Christopher (KDOC# 0077709), KASPER – Offender Population Search, https://kdocrepository.doc.ks.gov/kasper/search/detail?kdocNumber=77709 (last visited Mar. 2, 2021) (listing Mr. Lee's location as "Paroled to Detainer" to Federal custody on August 10, 2017).

(considering defendant's criminal history and defendant's "disturbing" offense conduct of a previous predicate offense). [5]

Here, Mr. Lee's change in career offender status favors reducing his sentence under § 3553(a)'s sentencing factors. If sentenced today, Mr. Lee's sentencing guidelines would "produce a sentencing range of 51 to 63 months" compared to the 151 to 188 months calculated originally. Doc. 34 at 21; Doc. 22 at 16 (PSR ¶ 85). And, Mr. Lee has served about 54 months "after factoring in good time credits." Doc. 34 at 21. But Mr. Lee's change in career offender status is just one piece in the court's analysis and, as explained below, other § 3553(a) sentencing factors weigh against his motion.

Ignoring Mr. Lee's change in career offender status, his criminal history still includes 10 drug related convictions. *See id.* at 6–11 (PSR ¶¶ 29–33, 36, 38–39, 45–46). And, it includes nine other criminal convictions for various offenses, including: felony conviction of a firearm

---

[5]    *See also United States v. Goodwin*, No. 10-10083-01-EFM, 2021 WL 102862, at *3 (D. Kan. Jan. 12, 2021) (considering appropriate sentence after defendant "served approximately 85 percent" and holding "that 151 months is the appropriate sentence although Defendant would no longer qualify for this sentence today" after considering defendant's violent disciplinary record in prison and his offense conduct—bank robbery); *United States v. Gray*, No. 11-20131-01-DDC, 2020 WL 5094710, at *7 (D. Kan. Aug. 28, 2020) (finding change in career offender status a factor favoring compassionate release motion but other factors weighed against reducing imposed sentence and defendant had not satisfied extraordinary and compelling requirement).

*Cf. United States v. Gilchrist*, No. 12-20066-40-KHV, 2020 WL 5408138, at *5 (D. Kan. Sept. 9, 2020) (considering the court originally sentenced defendant "consistent with his Rule 11(c)(1)(C) plea agreement" but finding change in career offender status weighed in favor of release because "if defendant were sentenced today for the same offense, his sentencing range would be significantly lower" and he had no "history of violence or possession of firearms"); *United States v. Aguilar*, No. 5:02-CR-40035-001-JAR, 2020 WL 4581739, at *1 (D. Kan. Aug. 3, 2020) (granting compassionate release after change in career offender status which lowered guidelines range and considering defendant "has served more than 17 years, the majority of his sentence, and a longer sentence than he would face today for the same conduct"); *United States v. Pullen*, No. 98-40090-01-JAR, 2020 WL 4049899, at *8 (D. Kan. July 20, 2020) (granting compassionate release because change in career offender status weighed in favor of compassionate release after fifteen years' imprisonment, which is a "sentence that far exceeds the top end of the Guidelines that would have applied" if sentenced today).

14

(PSR ¶ 37), felony theft (PSR ¶ 41), and felony attempted aggravated burglary (PSR ¶ 44). *See id.* at 6–11 (PSR ¶¶ 34–35, 37, 40–44, 47). Also, it is significant that Mr. Lee committed the current offense less than a year after his conviction for attempted distribution of marijuana and while on probation for that offense. *Id.* at 11 (PSR ¶ 50). Finally, it is significant that law enforcement found a firearm in the center console of Mr. Lee's vehicle that contained the methamphetamine supporting the current offense. *Id.* at 4 (PSR ¶ 8).

Finally, Mr. Lee's criminal history affects his motion in a subtle, but nonetheless substantial fashion. Mr. Lee was arrested for the charges in his case on October 13, 2015—some two months after the car stop that located his methamphetamine and firearm. *See* Doc. 22 at 1 (PSR) (arrest date); *see id*. at 3–4 (PSR ¶ 8) (date of offense conduct). Three months later, in January 2016, he pleaded guilty to his felony drug charge. *Id.* at 3 (PSR ¶ 4). Though Mr. Lee has remained in custody since his October 2015 arrest, *id.* at 1 (PSR), he didn't begin accruing credit against his federal sentence until August 10, 2017, when he first entered federal custody. *See* Lee, Steven Christopher (KDOC# 0077709), KASPER – Offender Population Search, https://kdocrepository.doc.ks.gov/kasper/search/detail?kdocNumber=77709 (last visited Mar. 2, 2021) (listing Mr. Lee's location as "Paroled to Detainer" on August 10, 2017, to Federal custody). In other words, Mr. Lee devoted the 22 months between his arrest in mid-October 2015 and mid-August 2017 (federal custody commencement date) serving a sentence for Kansas state court convictions. *See* Doc. 22 at 11 (PSR ¶ 46) (probation in Shawnee County, Kansas court case revoked October 2015 and original 37-month incarceration sentence imposed).

Had Mr. Lee devoted those 22 months to serving his conviction in this federal case, he already would have served the custody component of his federal sentence. This conclusion uses Mr. Lee's facts. Specifically, Mr. Lee's motion reports that he will complete serving his federal

15

custody time on September 19, 2022.  *See* Doc. 34 (Mr. Lee's motion) at 20; *see also* Steven C. Lee, Reg. No. 25620-031, https://www.bop.gov/inmateloc/ (last visited Mar. 2, 2021).  That date is roughly 18 months from the date of this order.  In short, Mr. Lee's state court recidivism has extended his stay in a federal prison, and the court is unwilling to spare him the consequences of those decisions.

Mr. Lee's criminal history and pattern of disrespect for the law weigh against his motion.  Reducing Mr. Lee's 72-month sentence by 25%—a sentence he agreed to in his 11(c)(1)(C) plea agreement—would produce a sentence that no longer reflects the seriousness of the offense, promote respect for the law, or afford adequate deterrence to criminal conduct.  *See* 18 U.S.C. § 3553(a)(2)(A)–(C); *see also United States v. Dodds*, No. 13-20043-01-JWL, 2021 WL 84176, at *3 (D. Kan. Jan. 11, 2021) (When a defendant's "criminal history . . . reflects a continuing disrespect for the law and an inability to comply with conditions of probation" the court "cannot conclude that defendant is a proper candidate for compassionate release.").

*Last*, Mr. Lee argues reducing his sentence comports with "the public safety and deterrence factors" because "releasing Mr. Lee now does not statistically increase the risk that he engages in new criminal behavior[.]"  Doc. 34 at 21–22; *see also* 18 U.S.C. § 3553(a)(2)(B)–(C).  The government argues Mr. Lee presents a danger to society based on his criminal history.  Doc. 36 at 19.

Mr. Lee's general arguments about recidivism rates and public safety are not persuasive to the court.  Doc. 34 at 21–22.  Mr. Lee had 23 criminal history points and committed his current offense while on probation.  Doc. 22 at 11 (PSR ¶¶ 46, 50).  And law enforcement found methamphetamine and a firearm in the center console next to the driver's seat.  *Id.* at 3 (PSR ¶ 8).

16

The court recognizes the COVID-19 pandemic may increase the severity of Mr. Lee's sentence beyond what it considered during his May 2016 sentencing. And, the court recognizes and commends, Mr. Lee's rehabilitative efforts. But, Mr. Lee's lengthy criminal history and repeated disrespect for the law weigh significantly against reducing his sentence.

Given Mr. Lee's incarceration and health condition during the COVID-19 pandemic, the court's assessment of various factors under § 3553(a) have shifted. The court concludes that several sentencing factors favor a lesser sentence today than when our court considered them during Mr. Lee's May 2016 sentencing. But those factors have not shifted far enough for the court to conclude that the pertinent § 3553(a) factors—*in aggregate*—justify the modified sentence that Mr. Lee seeks.

The court finds Mr. Lee's sentence remains sufficient but not greater than necessary to comply with § 3553(a)'s sentencing factors. Thus, modifying the imposed term of imprisonment is not warranted under § 3582(c)(1)(A). Mr. Lee's motion fails to show he satisfies § 3582(c)(1)(A)(i), so, the court dismisses it for lack of subject matter jurisdiction. *See Saldana*, 807 F. App'x at 819.

## IV.     Conclusion

Mr. Lee asks the court to modify his sentence by reducing his term of imprisonment to time served and adding a term of home confinement to his supervised release. While the risks his medical conditions present to him while incarcerated during the COVID-19 pandemic do alter the court's analysis of certain sentencing factors under § 3553(a) to some extent, the shift is insufficient to permit the court to conclude that Mr. Lee's extraordinary and compelling reasons warrant the sentencing modification he seeks. So, § 3582(c)(1)(A) does not permit the court to

modify Mr. Lee's sentence.  The court dismisses the motion for lack of subject matter jurisdiction.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Mr. Lee's Motion to Reduce Sentence (Doc. 34) is dismissed for lack of subject matter jurisdiction.

**IT IS SO ORDERED.**

**Dated this 16th day of March, 2021, at Kansas City, Kansas.**

                                                **s/ Daniel D. Crabtree**
                                                **Daniel D. Crabtree**
                                                **United States District Judge**